### WILLIAM RIVERS v. THE STATE.

1. INFORMATIONS — SURPLUSAGE — CASE STATED.— Information charges that appellant did "wilfully wound a hog, the same being the property of *him the said* H. S., contrary," etc. The name of H. S. nowhere else appears in the information. *Held*, that the words "him the said" may be eliminated as surplusage.
2. MALICIOUS MISCHIEF — INFORMATION that charges the wounding of "a hog" sufficiently describes the animal, as that term is included in the term "swine" as used in the statute.
3. SAME.— An information for the wilful wounding of an animal enumerated in the statute need not further allege that it is a "domesticated animal."
4. AN AFFIDAVIT of a person who had been convicted of a felony, and who, unpardoned, had served a term in the penitentiary, is incompetent as the basis of a criminal prosecution. See the opinion *in extenso*.
5. EXECUTIVE PARDON — RESTORATION OF CIVIL RIGHTS.— It is only in cases of conviction for perjury or false swearing that a charter of pardon must specifically restore the competency of the convict to testify in courts of justice. In all other cases of felonious convictions, a general pardon effectuates the restoration of competency to the convict, and makes his affidavit a sufficient basis for a criminal prosecution. See the opinion for a charter of pardon *held* to be a general pardon.
6. JUDGMENT — VERDICT — VARIANCE.— The variance is material when it appears that the judgment imposed a more severe penalty than that assessed by the verdict of the jury. But the judgment may be reformed by this court.

APPEAL from the County Court of Walker. Tried below before the Hon. J. M. SMITHER, County Judge.

The opinion sufficiently discloses the case.

*Wynne & Brown*, for the appellant.

*Horace Chilton*, Assistant Attorney General, for the State.

WHITE, P. J.   The information charges that " William Rivers did, in the aforesaid county and State, wilfully wound a hog, the same being the property of *him the said* Harvey Stoneham, contrary," etc.   The affidavit of Harvey Stoneham, upon which it is based, is attached to and made part of the information, but Stoneham's name had not been mentioned in the information until as used above, to wit, "of *him the said* Harvey Stoneham." If the words "him the said" be eliminated as surplusage, which is permissible, then the information is unobjectionable under art. 680 of the Penal Code, which reads, "if any person shall wilfully or wantonly kill, maim, wound, disfigure, poison or cruelly or unmercifully beat and abuse any animal or bird included in the preceding article, he shall be fined not exceeding two hundred and fifty dollars." The preceding article (art. 679) makes it an offense "to kill, etc., any horse, ass, mule, cattle, sheep, goat, swine, dog or other domesticated animal," etc.

A motion to quash made by defendant was overruled. From the grounds set forth in the motion we infer that the counsel must surely have been laboring under the belief that the information was brought under art. 685 of the Code, since the objections urged were manifestly with reference to the provisions of this latter article. Such was not the case, as we have seen above. In another motion to quash the information the objection urged is, " Because said information does not state that said hog alleged to have been wounded was a domesticated animal, as required by arts. 679 and 680 of the Penal Code."

It is not necessary to allege that any of the animals named in art. 679 should be further described as "domes-

ticated animals." To injure any of the animals named
is an offense, and besides those specifically named the
statute makes it an offense to injure any "other domes-
ticated animal" not named. This is what is meant by
"or other domesticated animal,"— some other domes-
ticated animal than those mentioned. "Hog" is in-
cluded in and synonymous with the term "swine" used
in art. 679, and to allege the wounding of "a hog" is a
sufficient description of the animal. *Duval* v. *State*, 8
Texas Ct. App. 370; *Robertson* v. *State*, 1 Texas Ct. App.
312. As to the change in the wording of the present
from that of the old statute defining this offense, see
*Rountree* v. *State*, decided at the present term. *Ante*,
p. 110.

Other objections were made to the complaint and to
the complainant when he was offered as a witness for
the State. It was objected to the complaint or affidavit
that Stoneham, the affiant, had been convicted of a
felony, had served a term in the penitentiary, and was
consequently infamous and incompetent to testify under
the law (Code Crim. Proc. art. 730, subdivision 5), and
that, being incompetent to testify, he was incompetent
to make an affidavit upon which to institute a criminal
prosecution. This doctrine is not without ample author-
ity to support it. In *Walker* v. *Kearney*, 2 Strange's
Eng. R. 1148, it was held that the affidavit of one con-
victed of forgery could not be read to support a com-
plaint. The court say, "if he cannot be a witness in a
civil suit where a third person is interested in his evi-
dence, *a fortiori*, he shall not be received here." And the
same rule once prevailed with reference to affidavits of
Quakers in support of a criminal charge. *Rex* v. *Gard-
ner*, 2 Burrow's Eng. R. 1117.

Mr. Greenleaf says, "In regard to the extent and
effect of the disability thus created (by conviction for
felony), a distinction is to be observed between cases in

which the person disqualified is a party and those in which he is not. In cases between third persons his testimony is universally excluded. But where he is a party, in order that he may not be wholly remediless, he may make any affidavit necessary to his exculpation or defense, or for relief against an irregular judgment, or the like; but it is said that his affidavit shall not be read in support of a criminal charge." 1 Greenl. Ev. § 374. Mr. Bishop says of such convicts, "they are supposed to be so regardless of truth that it would be unjust to compel a person litigant to suffer from what they might assert, even under oath. Yet, if the parties themselves are in this situation, they are usually allowed to make the same affidavits in their causes as other men are, for such affidavits are always against the general policy of the law, and are permitted only from necessity, for the sake of convenience, and for the dispatch of business,— reasons which apply as well where the party is infamous as where he is not." 1 Bish. Crim. Law (4th ed.), § 743.

To the general rule that a convict's affidavit cannot be read in support of a criminal charge, Mr. Wharton endeavors to establish an exception. He says: "But the same principle which makes a wife admissible against her husband, in cases of violence committed on herself, would render the convict competent to obtain redress for personal injury, when no other evidence could be obtained." Whart. Crim. Ev. (8th ed.) § 364. We cannot concur in this doctrine, and he cites no authority supporting it.

In the case before us, however, when the defendant interposed the objection that the affiant and witness, Stoneham, was a convicted felon, the prosecution produced a charter of pardon for the witness, as follows, viz.:

"Proclamation by the Governor of the State of Texas.

"To all whom these presents shall come: Whereas, at the February term, 1878, in the District Court of Montgomery county, State of Texas, Harvey Stoneham was

convicted of the theft of an ox, and sentenced to the penitentiary for two years: Now, therefore, I, O. M. Roberts, Governor of Texas, in consideration of the fact that said convict voluntarily went into service in the penitentiary before his appeal was decided, do, by virtue of the authority vested in me by the Constitution and laws of this State, hereby pardon the said Harvey Stoneham, the same to take effect two years from the time that he commenced said service in the penitentiary,— two years being the length of his sentence. In testimony whereof I have hereto signed my name and caused the seal of the State to be affixed, at the city of Austin, this 8th day of April, A. D. 1880. (Signed.)

[Seal]        "O. M. ROBERTS, Governor of Texas.
"By the Governor:
        "JOHN D. TEMPLETON, Secretary of State."

The position assumed and insisted upon is that this pardon is not a full pardon or pardon for the crime of which the witness was convicted, but that it was a mere indulgence granted the prisoner on the part of the executive, in remitting or commuting the term of his imprisonment; and that nothing but a pardon for the crime itself, so expressed in terms in the charter, could restore competency to the witness. In the language of the statute, amongst those incompetent to testify in criminal cases are "all persons who have been or may be convicted of felony in this State, or in any other jurisdiction, unless such conviction has been legally set aside or unless the convict has been legally pardoned for the crime of which he was convicted." Code Crim. Proc. art. 730, subdiv. 5.

"A pardon may be full or partial, absolute or conditional. . . . When the pardon is a full one, its collateral and consequential legal effects cannot be abridged by any language employed in it; for they must be determined by the law of the land. If it is a conditional pardon, the condition may be precedent or subsequent; if

precedent, that is if by its terms some event is to transpire before it takes effect, its operation is deferred until the event occurs.   If the condition is subsequent, the pardon goes into effect immediately, yet becomes void whenever the condition is broken." 1 Bish. Crim. L. (4th ed.) § 760.   "The effect of a full pardon is to absolve the party from all the legal consequences of his crime and of his conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided." *Id.* § 762.   "A full pardon granted after the convict has suffered the entire punishment imposed upon him by his conviction removes the common law disability of incompetency as a witness." *State* v. *Blaisdell,* 33 N. H. 388; 1 Greenl. Ev. § 377.

In the case of *The People* v. *Pease,* 3 Johns. Cas. 333, it was held that if the pardon of one sentenced to the penitentiary for life contains a proviso that nothing therein contained shall be construed so as to relieve the party from the legal disabilities consequent upon his sentence other than the imprisonment, the proviso is void, and the party is fully rehabilitated." On the other hand, whilst "a pardon of one convicted and sentenced for an infamous offense restores his competency as a witness, a remission merely of his punishment does not restore his competency." *Perkins* v. *Stevens,* 24 Pick. 277.   It is only in cases of perjury or false swearing that the pardon is required under our statute to state specifically by its terms that it restores the convict's competency to testify in a court of justice.   Code Crim. Proc. art. 730, subdiv. 5. In all other cases the general pardon restores the competency.

We are of opinion that the instrument before us was a general pardon, to take effect at a certain time mentioned. At the expiration of the time, the pardon became full, complete and absolute, and the party became rehabilitated in all his rights.

The only remaining question is one of variance between the verdict and judgment. The verdict finding the defendant guilty imposed as his punishment a fine of one dollar. Judgment was rendered against him for a fine of ten dollars and costs. It is true that, under the general power conferred by statute, this court might reform and correct the judgment (Code Crim. Proc. art. 869); but, in view of the new evidence which defendant claims to be accessible if a new trial is awarded him, and also upon the ground of variance, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*